Arago, employed as a transport in the service of the United States, but not a commissioned ship-of-war, July 24, 1863, and were sent into this port, where the prize was libelled in this court, for condemnation. Such ratification of the arrest of the prize was equivalent to an original seizure by authority of the government, and the affirmance of the capture by the United States is authenticated by instituting this suit thereon. 2 Wheat. [15 U. S.] Append. notes, p. 7. The monition and attachment issued in the suit were duly returned in court August 18, 1863, with the usual proclamation. Thomas Sterling Begbie, of London, appeared, on such return, and filed his claim as owner of the vessel and cargo named in the libel, without exception of form to the regularity of the action. The cause was submitted by the United States attorney to the decision of the court, during the present term, upon the proofs produced therein, no party appearing in defence to the action and issue on the pleadings.

The master of the vessel testifies, on his examination in preparatorio, that he took possession of the Emma at Glasgow, Scotland; that he declined to answer who put her into his possession; that she was captured in the Gulf Stream, off the coast of North Carolina, he supposes, for blockade running; that he, the witness, made no resistance to the capture, but exerted himself to escape from it; that part of the crew came on board the Emma in Glasgow, and part in Nassau, Bermuda; that the voyage was from the Bermudas, and was to have ended there; that the cargo on board at the time of capture was turpentine, resin, tobacco, and cotton, put on board at Wilmington. North Carolina, about the middle of July, 1863; that he sailed from Glasgow to Nassau, and from Nassau to Wilmington; that he, the witness, declined to answer who owned the vessel; that the owner lived in England; that he, the witness, does not know the owner of the cargo; that he has no papers of any kind in his possession in relation to the vessel or cargo; that the vessel was captured near the coast of North Carolina, July 24, near 11 o'clock a. m.; that she had regular papers on board when she left Wilmington; that he burned them all on being chased, and when upon the point of being captured, to prevent their falling into the hands of the captors; that he knew that Wilmington was blockaded when he entered the port; that he evaded the blockade in going in, and was captured soon after leaving, on his way out; that he had known all about the war for many months; that his vessel entered the harbor of Wilmington covertly and secretly, whilst that port was under blockade, and sailed from it as before stated by him; and that he loses £1,000 in consequence of the capture, which was to have been his remuneration had he succeeded in completing his voyage.

The first mate concurs, in general, in the facts stated by the master. He says that he heard the latter say that he had destroyed the ship's papers, but he, the witness, did not see it done; and that the Emma had succeeded in running the blockade of Wilmington four several times.

The second officer of the vessel gives no testimony contradictory to the evidence of his fellow officers. He asserts no fact respecting this voyage, criminating the conduct of the vessel or of the parties prosecuting it. He says that he knows that the vessel had run the blockade of the same port at another time.

The steward of the vessel, on his examination, deposed to the same effect with the first and second officers of the vessel. To the 12th and 24th interrogatories he says: "She (the vessel) had run the blockade from Nassau and Bermuda into Wilmington, four times." To the 21st interrogatory he says: "I knew all about the blockade, and so did the captain."

No papers were captured with the vessel and produced in court with the prize and the witnesses taken on board.

This recapitulation of the proof demonstrates that the case is one of premeditated violation of public law, and that the vessel and cargo are plainly subject to judgment of condemnation and forfeiture. A decree will be entered accordingly.

## Case No. 4,462.

### The EMMA.

[Blatchf. Pr. Cas. 607.][1]

District Court, S. D. New York. July 8, 1864.

BETTS, District Judge. The above-named vessel and cargo having, by the judgment of this court [Case No. 4,461], rendered in the term of October last past, been condemned as prize of war, and the report, dated December 23, 1863, made to the court by the prize commissioners, under the order of the court, to take evidence and report to the court what public ships of the United States are entitled to share in said prize, showing that the capture was made by the

---

[1] [Reported by Samuel Blatchford, Esq.]

United States steam transport ship Arago, no other vessel co-operating therein, or being within signal distance at the time, and that the captured vessel was of inferior force, and it appearing to the court, by the provisions of the act of congress, entitled "An act to regulate prize proceedings and the distribution of prize money, and for other purposes," approved June 30, 1864, that vessels not of the navy, present at the capture of a prize and rendering actual assistance in the capture, may share in the prize, and it appearing to the court, from the report of the said prize commissioners, that the said ship Arago was the sole vessel present at the capture of said prize, and that said prize was of inferior force to the Arago, and it being moved by the counsel for the owners of the Arago, and assented to by the United States attorney, that the Arago, under the provisions of the existing law, be admitted to receive her lawful share of the aforesaid prize proceeds, and the court being further moved to refer it to a commissioner of the court, to ascertain and report to the court the persons belonging to the Arago entitled to share in the said prize, and the proportions thereof lawfully appertaining to each, it is considered and ordered by the court that it be referred to John A. Osborn, Esq., one of the commissioners holding an appointment as such by the United States circuit court within this district, to inquire and ascertain, from the report therein heretofore made by the prize commissioners, and other legal proofs, the names and employments of the several captors on board the Arago, present and engaged in the actual capture of the prize aforesaid, and the relative rewards and compensations properly allowable to them severally, and to report the same to the court with all convenient despatch. It is further ordered, that such commissioner have taxed for his service the like costs as are taxable under the fee bill of February 26, 1853 [10 Stat. 161], for similar services rendered in admiralty causes in courts of the United States.

---

## Case No. 4,463.

### The E. M. McCHESNEY.

[8 Ben. 150;[1] 49 How. Pr. 178; 21 Int. Rev. Rec. 221.]

District Court, S. D. New York. June, 1875.[2]

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

[2] [Affirmed in Case No. 4,464.]

Goodrich & Wheeler, for libellants.
J. B. Elwood, for claimant.

BLATCHFORD, District Judge. The libel in this case alleges, that, in November, 1873, at the city of Buffalo, the libellants shipped on board of the canal boat E. M. McChesney, then lying in the Buffalo creek or river, a navigable stream emptying into Lake Erie, about 15,000 bushels of oats, to be transported on said boat from Buffalo to the city of New York, and there delivered to A. R. Gray & Co., the agents of the libellants, for a certain rate of freight, then agreed to be paid by the libellants; that the boat proceeded on said voyage with said oats, and, being detained by the ice in the canal, did not arrive at the city of New York till the month of May, 1874, and then failed to deliver 3,300 bushels of the oats; and that the master of the boat has concealed the oats and converted them to his own use. The libellants claim damages to the amount of $2,145.

The answer, which is put in by a mortgagee of the canal boat, as claimant, avers that this court has not jurisdiction of the subject matter of this suit, in that the boat was a canal boat, employed in transporting freight on the Erie canal, between Buffalo and Albany, in the state of New York, and was so engaged, and between those points, at the time and on the occasion of the alleged loss and conversion set forth in the libel; that the waters of said canal are not